[Cite as *In re H.M.*, 2013-Ohio-237.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| IN THE MATTER OF: | : | JUDGES: |
|  | : | Patricia A. Delaney, P.J. |
|  | : | William B. Hoffman, J. |
| H.M., H.M. AND G.M. | : | Sheila G. Farmer, J. |
|  | : |  |
|  | : | Case No. 2012 AP 09 0056 |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Civil Appeal from Tuscarawas County
Court of Common Pleas, Juvenile
Division, Case No. 10 JN 00584

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      January 11, 2013

APPEARANCES:

For Appellee-Tuscarawas County      For Appellant-C.S.
Job and Family Services

DAVID HAVERFIELD      JOHN A. GARTRELL
389 – 16th Street, S.W.      Assistant Public Defender
New Philadelphia, Ohio 44663      153 N. Broadway
New Philadelphia, Ohio 44663

Guardian Ad Litem      For Father-Gabriel Mortier

KAREN DUMMERMUTH      DOUG JACKSON
349 East High Avenue      214 N. Dawson Street
New Philadelphia, Ohio 44663      Dennison, Ohio 44621

*Delaney, P.J.*

{¶1} Appellant, C.S. (mother), appeals from the August 13, 2012 Judgment Entry of the Tuscarawas County Court of Common Pleas, Juvenile Division, terminating her parental rights and granting permanent custody of H.M., H.M., and G.M. to Tuscarawas County Job and Family Services.

### STATEMENT OF THE FACTS AND CASE

{¶2} Appellant is the mother of H.M. (DOB 10/20/04), H.M. (DOB 11/28/05) and G.M. (DOB 1/20/07). Appellant and the children's father, who is not part of this appeal, have never been married.

{¶3} On November 22, 2010, Tuscarawas County Job and Family Services (hereinafter "TCJFS") filed a complaint alleging that the children were neglected and dependent children. The complaint alleged, in part, that appellant had no housing and had failed to meet the basic needs of her children. Pursuant to a Judgment Entry filed the same day, the children were placed in the temporary custody of TCJFS. Appellant was granted supervised visitation with the children "as is acceptable to TCJFS".

{¶4} An adjudicatory hearing was held on December 22, 2010. At the hearing, appellant stipulated that the children were neglected and dependent children and the trial court found them to be neglected and dependent children. The trial court ordered that the children would remain in the temporary custody of TCJFS.

{¶5} A case plan was filed with the court on December 22, 2010. The plan required appellant to complete a psychological evaluation and follow any treatment recommendations, to participate in parenting education classes and domestic violence

counseling and to obtain appropriate housing. The plan also required appellant to obtain steady employment and to provide for the basic needs of her children.

{¶6} A dispositional hearing was held on January 18, 2011. As memorialized in a Judgment Entry filed on January 19, 2011, the trial court, upon consent of the parties and the recommendation of the Guardian Ad Litem, ordered that the children remain in the temporary custody of TCJFS. The trial court also adopted the case plan and ordered that appellant's visits with the children would remain supervised.

{¶7} On October 3, 2011, TCJFS filed a motion seeking a six month extension of its temporary custody. TCJFS, in its motion, indicated that appellant had completed a psychological evaluation and was actively engaged in counseling, that she had completed parenting education and that her visits with the children went well. TCJFS further alleged that appellant lacked any source of income and was residing in a one bedroom apartment.

{¶8} Appellant, on November 10, 2011, filed a motion seeking expanded visitation with the children on the basis that she had complied with her case plan. The trial court, pursuant to a Judgment Entry filed on December 1, 2011, granted TCJFS' motion to extend temporary custody, but did not grant appellant increased visitation with the children.

{¶9} On April 2, 2012, TCJFS filed a motion seeking permanent custody of the children. TCJFS, in its motion, alleged that the children had been in the temporary custody of the agency for a period in excess of twelve out of the prior twenty-two months and that appellant had failed to alleviate the conditions that caused the children to be placed with the agency. A hearing on such motion was held on August 9, 2012.

{¶10} At the hearing, Kristina Blick, case manager at TCJFS, testified that the children had consistently been in the agency's custody since November of 2010. She testified that the children were placed in the agency's custody because appellant moved from place to place and lived with "some inappropriate individuals" and that the basic needs of the children were not being met. T. at 3. According to Blick, the family had a substantial history of involvement with child welfare agencies not only in Tuscarawas County, but also in Georgia where they previously had resided. The issues in Georgia concerned lack of stable housing, neglect and concerns of domestic violence.

{¶11} Blick testified that a case plan was developed for appellant that required her to complete a psychological examination and to follow any recommendations, to complete a parenting class and domestic violence counseling, and to be able to provide for the children's basic needs in terms of income and housing. Appellant completed a psychological evaluation. The following testimony was adduced when Blick was asked whether specific treatment recommendations were made for appellant:

{¶12} "A. Yes.

{¶13} "Q. Okay, what additional services was she required to do?

{¶14} "A. He [Dr. Dean at Community Mental Healthcare] recommended individual counseling, uh, he also recommended that she see a physician regarding her depression, and that she obtain employment by possibly being referred to the Bureau of Vocational Rehabilitation, also that she be required to obtain her GED, and he recommended parent education.

{¶15} "Q. Okay, uh, so since follow (sic) the recommendations of the psychological were part of the case plan, she was then required to complete those items as well, correct?

{¶16} "A. Right.

{¶17} "Q. Alright, has she completed counseling?

{¶18} "A. Um, she started counseling early on in the case at Community Mental Healthcare with Rosie Das. She attended about four to six sessions, and she [appellant] terminated that in June of 2011. She's recently reported that she's started seeing a counselor again, um, McKenzie Povlinko at Personal and Family Counseling Services. Carrie was only willing to sign a release for us to verify her attendance at those sessions. So she started, uh, at the end of June, attending weekly.

{¶19} "Q. So there was about a year gap in there where she wasn't doing any counseling?

{¶20} "A. Correct.

{¶21} "Q. Okay, and as far as her recent counseling, she's unwilling to allow you access to whatever information the counselor has, correct?

{¶22} "A. Right, other than that she's attending.

{¶23} "Q. Okay, alright, from your perspective, has she successfully completed that part of her case plan?

{¶24} "A. No." T. at 5-6.

{¶25} Blick further testified that appellant successfully completed parenting classes and domestic violence counseling, but had not obtained her GED and had not been employed since the start of the case. While appellant was referred for services to

the Bureau of Vocational Rehabilitation, Blick testified that appellant never followed through after a work assessment was performed on her and that the Bureau closed appellant's case because they did not have a current address for her. Appellant never followed through with the program to see if she could obtain employment, but claimed that her doctors told her that she could not work due to back issues.

{¶26} Blick further testified that appellant had no income and no residence of her own and that, in her opinion, appellant was not in any position to provide for the basic needs of her children. She further testified that appellant was not in any better position now than when the case was initiated to meet such needs.

{¶27} Blick was questioned about appellant and her visitation with her children. She testified that appellant had consistently visited with the children throughout the case and that the visits remained supervised. According to Blick, the visits went well.

{¶28} Blick further testified that the children were all placed together in the same foster home and had been during the entire time that they were in foster care. She testified that the children were doing well in their foster home and that the foster parents were interested in adopting them if permanent custody was granted to the agency. While a relative home study was conducted to determine if the parental grandparents, who resided in Georgia, were suitable, Blick testified that the state of Georgia would not approve placement and that the agency was unable to pursue that as an option. Blick further testified that she believed that it would be in the best interest of the children for permanent custody to be granted to the agency.

{¶29} On cross-examination, Blick testified that appellant terminated counseling because she did not like talking to people about her personal life and did not feel that

counseling was helping her.    She further testified that appellant had applied for social security disability benefits due to physical issues caused by back problems, but had been denied twice and was appealing. Blick testified that appellant told her that appellant's doctor said that she could not work.

{¶30}  At the hearing, appellant testified that she was residing with a family friend and had been doing so for about a month. She testified that she previously had been renting an apartment, but had no way to pay her bills. According to appellant, she was trying to get social security disability benefits. Appellant admitted that she had not had income for the last fourteen months, but testified that she had received six months of public assistance. Appellant also admitted that she had never followed up with the Rehabilitation Services Commission and testified that she had no disc in her lower back and had trouble sitting for long periods of time.  She testified that her back problems were a result of an epidural that she had received when her daughter was born. She also testified that she never obtained her GED because "it was just a suggestion…" and that she never had the motivation to get one.  T. at 46-47. When questioned about her counseling, appellant testified that she stopped attending because she did not like the counselor. Appellant was unable to specify how she would provide for her children if she did not receive social security disability benefits. She admitted that she had done nothing since her social security appeal was denied in April of 2012 to secure employment.

{¶31}  The following is an excerpt from appellant's testimony at the hearing:

{¶32}  "Q. The problem is, ma'am, that if we look back and we say, we go back to, um, we go back to January of 2006 is when Tuscarawas County opened the case, or

had an investigation, we can go back 2006, 2007, 2008 is when we first start seeing, in writing, children are dirty, family in the homeless shelter, uh, family without furniture and mattresses. I mean, we have at least four years of showing failure to provide for the children. That's your responsibility, would you agree, that none of us have a responsibility to provide for your children but the parents?

**{¶33}** "A. Correct.

**{¶34}** "Q. Okay, we have at least four years, most likely when we go back to 2006, January of 2006, Tusc. County, home in poor condition, mom not taking care of the children, dad playing Xbox. Help Me Grow was involved at that time.

**{¶35}** "A. Correct.

**{¶36}** "Q. So we have issues dating all the way back to 2006. Now we've got a case plan that clearly outlines what you have to do to get the children returned, okay, and you're saying you have food stamps so that should be enough?

**{¶37}** "A. No, there's assistance out there for people who need it." T. at 55-56.

**{¶38}** At the hearing, Chris Tracey, a supervised visitation monitor with Personal and Family Counseling, testified that she supervised visitation between appellant and her children. The visitation was for two hours a week. Tracey testified that appellant missed five visits and had attended approximately 50 visits. According to Tracey, the visits went well and the children entered the room smiling. Tracey testified that she had no concerns with appellant's visits and that it appeared appellant loved her children and that they loved her.

**{¶39}** Pursuant to a Judgment Entry filed on September 10, 2012, the trial court terminated appellant's parental rights and granted permanent custody of the three

children to TCJFS. The trial court found that the children could not and should not be placed with either parent within a reasonable time and that appellant and the children's father had failed to substantially remedy the conditions causing the children to be removed. The trial court further found that the children had been in the temporary custody of TCJFS for a period in excess of twelve out of the prior twenty-two months.

{¶40} Appellant now raises the following assignment of error on appeal:

{¶41} "THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING PERMANENT CUSTODY TO JOB AND FAMILY SERVICES AS JOB AND FAMILY SERVICES FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT THE CHILDREN COULD NOT BE PLACED WITH MOTHER IN A REASONABLE AMOUNT OF TIME, AND THAT AN AWARD OF PERMANENT CUSTODY WAS IN THE CHILDREN'S BEST INTEREST."

I

{¶42} Appellant, in her sole assignment of error, argues that the trial court erred in awarding permanent custody of the children to TCJFS. Appellant specifically contends that TCJFS failed to prove by clear and convincing evidence that the children could not be placed with appellant within a reasonable amount of time and that an award of permanent custody was in the children's best interest.

{¶43} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the finder of fact could base its judgment. *Cross Truck Equipment Co. v. The Joseph A. Jeffries Co.,* 5th Dist. No. CA5758, 1982 WL 2911 (Feb. 10, 1982). Accordingly, judgments supported by some competent,

credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

**{¶44}** Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger,* 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997).

**{¶45}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

**{¶46}** Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for

twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

**{¶47}** In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

**{¶48}** Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, a trial court will usually determine whether one of the four circumstances delineated in R.C 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

**{¶49}** In this case, the trial court found by clear and convincing evidence that the children had been in the temporary custody of a public children services agency for twelve or more months of a consecutive twenty-two-month period pursuant to R.C. 2151.414(B)(1)(d). Appellant does not challenge the trial court's finding. This finding alone, in conjunction with a best-interest finding, is sufficient to support the grant of permanent custody. *In re Calhoun,* 5th Dist. No. 2008CA00118, 2008–Ohio–5458, ¶ 45.

{¶50} If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R .C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

{¶51} The trial court determined that the children could not be placed with appellant within a reasonable time pursuant to R.C. 2151.414(E)(1), which requires the following findings:

{¶52} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties."

{¶53} A review of the record supports the trial court's decision that the children cannot be placed with appellant within a reasonable time and that the agency provided reasonable case planning and diligent efforts to assist appellant to remedy the problems

that caused the children to be removed. The record indicates that appellant has had a long history with children's services involvement, both in Ohio and Georgia. As noted by the trial court, appellant has no income, has failed to obtain her GED due to lack of motivation and has failed to follow through with counseling and with vocational training. Appellant, on her own, terminated counseling for a year because she did not like her counselor and did not like revealing personal details. While she recently started counseling, she refused to provide TCJFS with a release. In addition, appellant does not have her own housing and is not employed. As noted by the trial court in its decision, appellant "is completely unable and unwilling to meet her parental responsibilities."

**{¶54}** We next turn to the issue of best interest. We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re Mauzy Children,* 5th Dist. No. 2000CA00244, 2000 WL 1700073 (Nov. 13, 2000), citing *In re Awkal,* 85 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist. 1994). The trial court determined it was in the best interest of the children to be placed in the permanent custody of appellee pursuant to R.C. 2151.414(D), and we agree.

**{¶55}** Testimony was adduced that the three children have been in the same foster home for a period of time and were doing well. In addition, there was testimony that the children had behavioral issues that had improved while they were in foster care. Testimony also was adduced that the foster parents were interested in adopting the

children. The Guardian Ad Litem, in her August 2, 2012 report, recommended that the children be placed in the permanent custody of TCJFS. The Guardian Ad Litem noted that, prior the children being in custody, the family was unstable and the parents had been unable to make the necessary changes.  Clear and convincing evidence supports the trial court's conclusion that it is in the best interest of the children to grant permanent custody to TCJFS.

{¶56}  Based on the foregoing, we find that the trial court did not err in awarding permanent custody of the children to TCJFS.

{¶57}  Appellant's sole assignment of error is, therefore, overruled.

{¶58} Accordingly, the judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division, is affirmed.

By: Delaney, P.J.

Hoffman, J. and

Farmer, J. concur

_____

_____

_____

JUDGES

PAD/d1218

[Cite as *In re H.M.*, 2013-Ohio-237.]

IN THE COURT OF APPEALS FOR TUSCARAWAS COUNTY, OHIO

FIFTH APPELLATE DISTRICT

IN THE MATTER OF:  :
   :
H.M., H.M. AND G.M.  :
   :
   :
   :  JUDGMENT ENTRY
   :
   :
   :
   :  CASE NO. 2012 AP 09 0056

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division, is affirmed.  Costs assessed to Appellant.

_____

_____

_____

JUDGES