[Cite as *In re H.M.*, 2013-Ohio-907.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| IN THE MATTER OF: H.M.,H.M., | : | JUDGES: |
| AND G.M. ALLEGED NEGLECTED | : | Hon. Patricia A. Delaney, P.J. |
| DEPENDENT CHILDREN | : | Hon. William B. Hoffman, J. |
|  | : | Hon. Sheila G. Farmer, J. |
|  | : |  |
|  | : |  |
|  | : | Case No. 2012AP090057 |
|  | : |  |
|  | : |  |
|  | : | O P I N I O N |

CHARACTER OF PROCEEDING:          Civil appeal from the Tuscarawas County
                                                              Court of Common Pleas, Juvenile Division,
                                                              Case No. 10JN00584

JUDGMENT:                                        Affirmed

DATE OF JUDGMENT ENTRY:          February 27, 2013

APPEARANCES:

For Father                                            Guardian Ad Litem

DOUGLAS V. JACKSON                      KAREN DUMMERMUTH
214 North Dawson Street                     349 East High Avenue
Uhrichsville, OH 44683                         New Philadelphia, OH 44663

For Mother
JOHN A. GARTRELL                           DAVID HAVERFIELD
Assistant Public Defender                     Tuscarawas County Job & Family Service
153 North Broadway                            389 16th Street S.W.
New Philadelphia, OH 44663                New Philadelphia, OH  44663

*Delaney, P.J.,*

**{¶1}** Appellant, G.M. (father), appeals from the August 13, 2012 Judgment Entry of the Tuscarawas County Court of Common Pleas, Juvenile Division, terminating his parental rights and granting permanent custody of H.M., H.M., and G.M. to Tuscarawas County Job and Family Services.

### STATEMENT OF THE FACTS AND CASE

**{¶2}** Appellant is the father of H.M. (DOB 10/20/04), H.M. (DOB 11/28/05) and G.M. (DOB 1/20/07). Appellant and the children's mother[1] have never been married.

**{¶3}** On November 22, 2010, Tuscarawas County Job and Family Services (hereinafter "TCJFS") filed a complaint alleging that the children were neglected and dependent children. The complaint alleged, in part, that mother had no housing and had failed to meet the basic needs of her children. Further, that appellant was living out of a van and had a history of involvement with law enforcement in the State of Georgia, including domestic violence. Pursuant to a Judgment Entry filed the same day, the children were placed in the temporary custody of TCJFS.

**{¶4}** An adjudicatory hearing was held on December 22, 2010. The trial court found that appellant was properly served with notice of the proceedings by publication. Appellant did not appear at the hearing. Accordingly, the trial court took testimony regarding appellant. At the hearing, Mother stipulated that the children were neglected and dependent children. The trial court ordered that the children would remain in the temporary custody of TCJFS.

---

[1] Mother filed a separate appeal. *In the Matter of: H.M., H.M., and G.M.*, 5th Dist. No. 2012 AP 09 0056, 2013-Ohio-237.

{¶5}    A case plan was filed with the trial court on December 22, 2010, requiring mother to complete several tasks.  A dispositional hearing was held on January 18, 2011.  As memorialized in a Judgment Entry filed on January 19, 2011, the trial court, upon consent of the parties and the recommendation of the Guardian Ad Litem, ordered that the children remain in the temporary custody of TCJFS.  The trial court also adopted the case plan.  Appellant was not included in the case plan because he had not participated in the proceedings.

{¶6}    A review hearing was held on April 18, 2011.  Appellant appeared at the review hearing.  As memorialized in a Judgment Entry filed on April 20, 2011, the trial court ordered that the children remain in the temporary custody of TCJFS.  Because Appellant screened positive for marijuana, the trial court ordered that Appellant have no contact or visitation with the children until he completed a psychological evaluation and until further order of the Court.

{¶7}    On April 21, 2011, the case plan was amended to add appellant.  The plan required appellant to complete a psychological evaluation and follow any treatment recommendations, to complete a drug and alcohol assessment and follow any recommendations for further treatment, and to participate in and complete parent education classes.  The plan also required appellant to obtain steady employment, to maintain appropriate housing, and to provide for the basic needs of his children.  The amended case plan was approved by the trial court on May 16, 2011.

{¶8}    The case plan was further amended on May 26, 2011, to include random drug testing for appellant due to past drug use.  The trial court approved the amendment on June 20, 2011.

{¶9} On October 3, 2011, TCJFS filed a motion seeking a six month extension of its temporary custody. TCJFS, in its motion, indicated that appellant had recently begun to work on case plan services, completed a psychological examination, was employed full-time, but had yet to provide a clean drug screen required for supervised visitation.

{¶10} On April 2, 2012, TCJFS filed a motion seeking permanent custody of the children. TCJFS alleged that the children had been in the temporary custody of the agency for a period in excess of twelve out of the prior twenty-two months and that appellant had failed to alleviate the conditions that caused the children to be placed with the agency.

{¶11} On May 11, 2012, appellant filed a motion for visitation. The trial court granted appellant supervised visitation on June 11, 2012. On June 20, 2012, appellant's supervised visitation was added to the case plan.

{¶12} A hearing on the motion seeking permanent custody was held on August 9, 2012.

{¶13} At the hearing, Kristina Blick, case manager at TCJFS, testified that the children had consistently been in the agency's custody since November of 2010. She testified that the children were placed in the agency's custody because mother moved from place to place with "some inappropriate individuals," appellant was believed to be living out of a van at the time the children were removed from the home, and that the basic needs of the children were not being met. T. at 3. According to Blick, the family had a substantial history of involvement with child welfare agencies not only in Tuscarawas County, but also in Georgia where they previously had resided. The issues

in Georgia concerned lack of stable housing, neglect, and concerns of domestic violence.

{¶14} Blick testified that the initial case plan did not include appellant because he did not come forward until April of 2011. According to Blick, she attempted to set up a few appointments with appellant prior to his inclusion in the case plan on April 21, 2011, but he canceled appointments and missed appointments with her for several months.

{¶15} Blick testified that when appellant was added to the case plan, he was required to complete a psychological examination and follow any recommendations, to complete parenting class, to complete a drug and alcohol assessment, and to be able to provide for the basic needs of the children. Appellant completed parenting classes in July of 2011. Appellant completed a psychological examination in June of 2011 and Blick testified that the following specific recommendations were made for appellant: he needed to demonstrate stability and pass random drug screens.

{¶16} When Blick was questioned about appellant's drug and alcohol assessment, she testified as follows:

> Um, he was initially scheduled to complete that in July of 2011, however, he didn't follow through with that until April of 2012, and he did have positive marijuana drug screens on April 18, 2011 and June 27, 2011. So we were waiting to hold off on things until he completed that drug and alcohol assessment, but it took him several months, and once he did complete it no further treatment was recommended for him by Alcohol and Addiction. T. at 12.

{¶17} Blick testified that appellant lives in New Philadelphia with his girlfriend, who receives social security income for mental health issues. Further, that appellant currently has no income because he was fired from his job in June of 2012. According to Blick, appellant told her that he got fired because his boss claimed that he was coming to work under the influence of alcohol.

{¶18} After appellant was approved for supervised visitation in June of 2012, Blick stated that she "supplied his phone numbers to Personal and Family Counseling Services to set that up, but I believe it took a few weeks for them to reach him and get that scheduled for whatever reason, I don't know." T. at 15.

{¶19} Blick testified that, in her opinion, appellant was not in any position to provide for the basic needs of his children and that appellant was not in any better position at the time of the hearing than when the case was initiated to meet such needs.

{¶20} Blick further testified that the children were all placed together in the same foster home and had been during the entire time that they were in foster care. She testified that the children were doing well in their foster home and that the foster parents were interested in adopting them if permanent custody was granted to the agency. While a relative home study was conducted to determine if parental grandparents, who resided in Georgia, were suitable, Blick testified that the state of Georgia would not approve placement and that the agency was unable to pursue that as an option. Blick testified that she believed that it would be in the best interest of the children for permanent custody to be granted to the agency.

{¶21} On cross-examination, Blick testified that appellant completed some of the services in the case plan, but had not fully complied because he was not currently

employed and because he failed to meet with her regularly. In addition, Blick testified that despite appellant's negative drug screens, she had some concerns about drug use by appellant because he took so long to complete his alcohol and drug assessment and missed appointments with her where he was supposed to be drug screened. Blick stated that appellant's residence would be adequate for the children, although cramped and small. Blick had concerns about appellant's ability to provide food for the children since he wasn't working, although he would likely be eligible for food stamps. Blick concluded that she didn't know if appellant could adequately parent because it took him so long to begin the case plan and become involved in the proceedings.

{¶22} On re-direct, Blick testified that appellant had a drug conviction from Georgia. She further testified that appellant's completion of some of the requirements contained in the case plan does not indicate that it is appropriate for the children to return home, as there was no visible "change in the situation that led to the children's removal in the first place." T. at 39.

{¶23} Mother testified that she and father had repeatedly assaulted each other. Further, Mother stated that while appellant has been physically and verbally abusive towards her, hit her, and engaged in screaming matches with her, he is a good father.

{¶24} At the hearing, appellant testified that his girlfriend collects social security each month that pays for rent, utilities, and food. On cross-exam, appellant stated that he was not around when the case first began because he was living in a van, trying to find employment, and had no physical address at which the agency could locate him. While he agreed that there was a history with Job and Family Services complaints in regards to his children, he could not provide an answer as to why he did not attempt to

contact his children or the caseworker in regards to his children for five months. Appellant admitted to leaving a voice mail message for Blick on December 21, 2010, stating that he could not meet with her because he had to go to work. When asked why he didn't follow-up with the caseworker after his December phone call, appellant testified that he had "no answer for that." T. at 85.

{¶25} Further, appellant testified that transportation issues prevented him from scheduling supervised visitation with his children until approximately one month after such visits were granted by the trial court. Upon further examination by the Guardian Ad Litem, appellant admitted that the supervised visitation site was approximately one mile from his home and that he "guess[es] there was no issue with transportation." T. at 88. Upon questioning by the Court, appellant testified that he could have walked to the visitation site, but did not do it, and does not know why he did not walk to the supervised visitation. Appellant testified that when he started supervised visitation with the children in July of 2012, the visits went well.

{¶26} Appellant acknowledged that it took him a period of time to start the case plan services, but stated that the delay was due to work complications. He stated that, up until his first supervised visit in July of 2012, he had not seen his children in over a year. Appellant testified that he was not concerned about the children because he assumed that Mother was caring for them. Appellant stated that he was terminated from his previous job because he was accused of showing up under the influence, although he denied such allegations. Further, appellant testified that his girlfriend receives social security income due to mental issues, but was unsure of the exact nature of her psychiatric issues.

{¶27} Appellant testified that he was arrested on July 6, 2012, on a drug-related charge, but that he was told the charge was being dismissed due to his cooperation in a separate investigation.

{¶28} At the hearing, Chris Tracey, a supervised visitation monitor with Personal and Family Counseling, testified that she supervised visitation between appellant and his children for three out of the four visits that appellant had with his children. Tracey testified that the visits went well and she had no concerns with appellant's visits.

{¶29} Patricia Orr, appellant's girlfriend, testified that she is on disability due to rheumatoid arthritis and depression and she is being treated with medication for both conditions. Despite these conditions, Orr testified that she can be fully involved in raising appellant's children.

{¶30} Pursuant to a Judgment Entry filed on September 10, 2012, the trial court terminated appellant's parental rights and granted permanent custody of the three children to TCJFS. The trial court found that the children could not and should not be placed with either parent within a reasonable time. The trial court further found that the children had been in the temporary custody of TCJFS for a period in excess of twelve out of the prior twenty-two months.

{¶31} Appellant now raises the following assignments of error on appeal:

{¶32} "THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING PERMANENT CUSTODY TO JOB AND FAMILY SERVICES AS JOB AND FAMILY SERVICES FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT THE CHILDREN COULD NOT BE PLACED WITH FATHER IN A REASONABLE

AMOUNT OF TIME, AND THAT AN AWARD OF PERMANENT CUSTODY WAS IN THE CHILDREN'S BEST INTEREST."

I

{¶33} Appellant, in his sole assignment of error, argues that the trial court erred in awarding permanent custody of the children to TCJFS. Appellant specifically contends that TCJFS failed to prove by clear and convincing evidence that the children could not be placed with appellant in a reasonable amount of time and that an award of permanent custody was in the children's best interest.

{¶34} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the finder of fact could base its judgment. *Cross Truck Equip. Co. v. The Joseph A. Jeffries Co.,* 5th Dist. No. CA5758, 1982 WL 2911 (Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

{¶35} Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger,* 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997).

{¶36} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶37} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶38} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need

for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

**{¶39}** Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, a trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

**{¶40}** In this case, the trial court found by clear and convincing evidence that the children had been in the temporary custody of a public children services agency for twelve or more months of a consecutive twenty-two month period pursuant to R.C. 2151.414(B)(1)(d). Appellant does not challenge the trial court's finding. This finding alone, in conjunction with a best-interest finding, is sufficient to support the grant of permanent custody. *In re Calhoun,* 5th Dist. No. 2008CA00118, 2008-Ohio-5458, ¶ 45.

**{¶41}** If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

**{¶42}** The trial court determined that the children could not be placed with appellant within a reasonable time pursuant to R.C. 2151.414(E)(1), which requires the following findings:

"(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties."

**{¶43}** A review of the record supports the trial court's decision that the children cannot be placed with appellant within a reasonable time and that the agency provided reasonable case planning and diligent efforts to assist appellant to remedy the problems that caused the children to be removed. The record indicates that appellant has had a long history with children's services involvement, both in Ohio and Georgia. As noted by the trial court, appellant has a criminal and drug history. Mother testified that she and appellant have repeatedly assaulted each other. Further, appellant has no income and relies on his girlfriend's disability income due to an unspecified mental illness, to pay for rent, food, and utilities. Appellant admitted that prior to his supervised visitation in July of 2012, he had not seen the children for over a year. Appellant could not explain why it took him so long to inquire about the well-being of

his children or to get involved in the case after being contacted by the agency case manager.

**{¶44}** While appellant complied with some of the case plan requirements, he has no employment due to the fact that he was terminated by his previous employer for allegedly showing up to work intoxicated. Further, appellant failed to meet with the agency case manager regularly and missed scheduled appointments with the agency case manager. As noted by the trial court in its decision, appellant was not involved in the first five months of this case. The trial court found that, regardless of appellant's compliance with some parts of the case plan, he was still not able to be a successful parent to the children and that his "lack of earlier progress is due to his own lack of effort. As a result, his progress as a parent has been minimal." Further, testimony was adduced that, with regard to appellant, there has been no visible change in the situation that led to the children's removal in the first place.

**{¶45}** We next turn to the issue of best interest. We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re Mauzy Children,* 5th Dist. No. 2000CA00244, 2000 WL 1700073 (Nov. 13, 2000), citing *In re Awkal,* 85 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist. 1994). The trial court determined it was in the best interest of the children to be placed in the permanent custody of appellee pursuant to R.C. 2151.414(D), and we agree.

**{¶46}** Testimony was adduced that the three children have been in the same foster home for a period of time and were doing well. In addition, there was testimony that the children had behavioral issues that had improved while they were in foster care. Testimony also was adduced that the foster parents were interested in adopting the children. The Guardian Ad Litem, in her August 2, 2012 report, recommended that the children be placed in the permanent custody of TCJFS. The Guardian Ad Litem noted that, prior to the children being in custody, the family was unstable and the parents had been unable to make the necessary changes. Clear and convincing evidence supports the trial court's conclusion that it is in the best interest of the children to grant permanent custody to TCJFS.

**{¶47}** Based on the foregoing, we find that the trial court did not err in awarding permanent custody of the children to TCJFS.

**{¶48}** Appellant's sole assignment of error is, therefore, overruled.

{¶49} For the foregoing reasons, the judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division, Ohio, is affirmed.

By Delaney, P.J.,

Hoffman, J., and

Farmer, J., concur

_____
HON. PATRICIA A. DELANEY


_____
HON. WILLIAM B. HOFFMAN


_____
HON. SHEILA G. FARMER

IN THE COURT OF APPEALS FOR TUSCARAWAS COUNTY, OHIO

FIFTH APPELLATE DISTRICT

IN THE MATTER OF:
H.M., H.M., AND G.M.
ALLEGED NEGLECTED
DEPENDENT CHILDREN

:
:
:
:
:
:
:           JUDGMENT ENTRY
:
:
:
:           CASE NO. 2012AP090057


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division, Ohio, is affirmed. Costs to appellant.


_____
HON. PATRICIA A. DELANEY


_____
HON. WILLIAM B. HOFFMAN


_____
HON. SHEILA G. FARMER